# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

No 12-CV-3340 (JFB)(SIL)

SUSAN LENER,

Plaintiff,

VERSUS

HEMPSTEAD PUBLIC SCHOOLS AND JULIUS BROWN,

Defendants.

**MEMORANDUM AND ORDER**
September 23, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiff Susan Lener ("Lener" or "plaintiff") brings this 42 U.S.C. § 1983 action against defendants Hempstead Public Schools ("the District")[1] and Julius Brown ("Brown"), alleging unlawful discrimination on the basis of race, religion, and disability, in violation of the Equal Protection Clause of the United States Constitution.[2] Plaintiff alleges that defendants discriminated against her when they (1) issued letters and negative performance evaluations based on her poor attendance and punctuality; (2) refused to allow her to work during the summer of 2011; and (3) issued her a reprimand regarding an alleged incident with a student.[3]

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that (1) plaintiff cannot establish a prima facie case of unlawful discrimination based on race or religion, much less show pretext, because she suffered no adverse employment actions and none of the events at issue occurred under circumstances giving rise to an inference of discrimination; (2) the claim of disability discrimination under the Equal Protection Clause fails as a matter of law;

---

[1] The District's correct legal name is the Hempstead Union Free School District.

[2] In her complaint, plaintiff asserted a claim for unlawful discrimination in violation of N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"). In a stipulation so ordered by this Court on August 22, 2012, plaintiff withdrew the claim without prejudice to reasserting it after complying with New York's notice of claim provisions. (Stipulation, Docket No. 7.) Plaintiff never reasserted the NYSHRL claim.

[3] Defendants' motion addresses other allegedly adverse employment actions, including the lack of pay for volunteering to learn a computer program. (*See* Def. Mem., at 6–8; Compl. ¶ 21.) In her opposition, however, plaintiff only addresses these three incidents. Accordingly, the Court concludes that plaintiff is not relying on other allegedly adverse employment actions, and shall only focus on the incidents discussed in the opposition.

(3) the District is not liable under *Monell*; and (4) there is no evidence that Brown discriminated against plaintiff.

For the reasons set forth herein, the Court grants the motion for summary judgment on the Section 1983 claims in its entirety. First, with respect to the § 1983 claims based upon race and religion, there simply is insufficient evidence in the record from which a rational jury could find that any adverse action was based upon plaintiff's race or religion. Second, plaintiff's attempt to bring a disability discrimination claim and a failure to accommodate claim under § 1983, rather than under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, fails as a matter of law. To the extent that plaintiff attempts to re-cast these claims as "class of one" and/or "selective enforcement" claims, those claims also cannot survive summary judgment.

However, given the Court's ruling that the disability-related claims were not cognizable under § 1983, the Court allowed plaintiff to argue that she should be given the opportunity to amend her complaint to re-assert such claims under the ADA. Defendants submitted a supplemental memorandum, arguing that summary judgment would be warranted on any such proposed claims. Having reviewed the supplemental submissions, the Court, for the reasons set forth herein, concludes that the amendment should be allowed because such claims are not futile; instead, they are plausible claims that, construing the evidence most favorably to plaintiff, would survive summary judgment. Specifically, plaintiff asserts that the negative evaluation (resulting from absences arising from her medical condition), the subsequent denial of the opportunity to work four days during the summer of 2011, and the failure to provide a reasonable accommodation, violated the ADA. Plaintiff has submitted evidence to support those claims, including, *inter alia*: (1) an alleged statement by Brown that "a person absent ten days or more with documentation would get a needs improvement in the area of attendance, and in any of those collateral areas that are affected by attendance"; (2) Brown's alleged threat to plaintiff in 2009 that, if she needed a "504 accommodation," she "shouldn't be working in Hempstead" and "had to look for another job"; (3) the Principal's testimony that he did not remember plaintiff having attendance issues before 2011; and (4) the June 10, 2011 negative evaluation, which plaintiff asserts was based solely on her absences while she was on sick leave. The Court concludes that the evidence in the record, when construed most favorably to plaintiff, is sufficient to create a genuine issue of fact as to plaintiff's proposed ADA claims, and such claims are not futile. Moreover, the District suffers no prejudice from the amendments, because the issues regarding these claims were explored fully in discovery in the context of the § 1983 claims. Accordingly, the Court will permit plaintiff to file an amended complaint containing ADA claims for disability discrimination and failure to accommodate, as related to the aforementioned events.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the parties' affidavits, depositions, exhibits, and Rule 56.1 Statements of Fact. The Court construes the facts in the light most favorable to the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Although the Rule 56.1 statements contain specific citations to the record, the Court cites to the statements rather than to the underlying citations. Unless otherwise noted, where a Rule 56.1

statement is cited, that fact is undisputed or the opposing party has not pointed to any contradictory evidence in the record.

Plaintiff, a Caucasian female who has been employed by the District as a guidance counselor since 1990, is the only Jewish guidance counselor at Alverta B. Gray Schultz Middle School. (Def. 56.1 ¶¶ 12–13; Pl. 56.1 ¶¶ 13.2, 64.) Brown, a Black male, was the Principal of that school from 2004 to 2007; then Assistant Superintendent for Secondary Education; and, at the time plaintiff filed her complaint, the Assistant Superintendent for Personnel. (Def. 56.1 ¶ 3.) Since January 2013, Brown has been the Deputy Superintendent. (Pl. 56.1 ¶ 45.)

1. Disability Accommodations

Plaintiff has depression and attention deficit hyperactivity disorder ("ADHD"). (Def. 56.1 ¶ 14.) Her psychiatrist, Dr. Marc Reitman ("Dr. Reitman"), informed defendants of these conditions on May 28, 2009. (Pl. 56.1 ¶ 14.1.) In a letter, Dr. Reitman wrote: "The combination of these two disorders have led to difficulties with attendance at work at times," because "[h]er symptoms of sleep disturbance make it extremely challenging to awaken in the morning on time and arrive at work at the expected hour," particularly "due to the medication changes and the impact on her symptoms." (2009 Reitman Letter, Def. Ex. J.) Dr. Reitman also requested that plaintiff be allowed accommodations at work. (*Id.*)

Plaintiff, however, never communicated a request for an accommodation for her ADHD. (Def. 56.1 ¶ 15; *see* Pl. Responses to First Request for Production, at Response No. 8, Def. Ex. F.) She also never asked for an accommodation for her depression after its diagnosis in 2008. (Def. 56.1 ¶ 16.) She claims she did not request accommodations because Brown said that plaintiff may lose her job if she did so. (Pl. 56.1 ¶ 15.1.) Specifically, Lener testified that, after meetings regarding a "504 accommodation" for her diagnosis, Brown commented that if plaintiff needed such an accommodation, she "shouldn't be working in Hempstead," and "had to look for another job." (Pl. 56.1 ¶¶ 16.1–16.4) Brown denies making this statement. (Def. 56.1 ¶ 31.) Plaintiff also did not request an accommodation after taking approximately two months off during the 2010–2011 academic year. (*Id.* ¶ 17.) She testified that she did not do so because she "was worried about [her] job considering Mr. Brown was still in a supervisory capacity in the district." (Pl. 56.1 ¶ 17.1.)

2. Attendance and Punctuality Issues

Lener's employment file includes fifteen letters dating from 2002 through 2010 that address plaintiff's attendance, punctuality, and absenteeism.[4] (Def. 56.1 ¶ 19; *see* Attendance Letters, Def. Ex. K.) She was not permitted to work during the summer in 2009 and 2010 because of her attendance during those school years. (Def. 56.1 ¶ 24.) Those denials are not the basis of plaintiff's discrimination claims.

Instead, plaintiff takes issue with the District's actions during the 2010–2011 year, when she took two months off without requesting a leave of absence and was "just out." (Def. 56.1 ¶ 33; *see* Deposition of Susan Lener ("Lener Dep."), Def. Ex. C, at 88–89 (stating that she did not take a leave of absence but used sick days for about two months in spring 2011); 2010–2011 Evaluation, Def. Ex. L (indicating that plaintiff took thirty-nine sick days during the academic year).) Lener testified that she was absent because of her depression, which

---

[4] The alleged adverse employment actions related to the disability discrimination claim concern the 2010–2011 academic year and the summer thereafter, not the attendance letters—all of which were provided to plaintiff before the 2010–2011 academic year.

3

causes her to suffer from sleep disorders, melancholy, anxiety, and mood changes. (Pl. 56.1 ¶ 19.3.) Dr. Reitman wrote letters to the District on April 1, 2011, and May 20, 2011, requesting that Lener's absence be allowed because of her treatment and changes in her medication. (Reitman 2011 Letters, Pl. Exs. G, I; Def. Exs. P, Q.) Plaintiff also was absent an additional seventeen days without providing a reason. (Def. 56.1 ¶ 34.) Thus, she concedes that not all of her absences have been because of her ADHD or depression. (Pl. 56.1 ¶ 38.) She also was absent for Jewish holidays and other medical issues.[5] (*Id.* ¶ 38.1.)

Subsequently, plaintiff received a negative evaluation of "Unsatisfactory" from Principal Henry Williams for the 2010–2011 year because of her absenteeism, despite meriting satisfactory marks in the other evaluation categories.[6] (Def. 56.1 ¶ 35; Pl. 56.1 ¶ 35.1; *see* Evaluation, Def. Ex. L.) Plaintiff claims that this mark stemmed from Brown's policy that "a person absent ten days or more with documentation would get a needs improvement in the area of attendance and in any of those collateral areas that are [a]ffected by attendance."[7] (Deposition of Julius Brown ("Brown Dep.") at 25, Pl. Ex. E.) Plaintiff complains that, as a result, she was (at first) denied the opportunity to work along with other guidance counselors over the summer of 2011, as well. (Def. 56.1 ¶ 22.) According to Brown, plaintiff's attendance issues justified the denial. (Pl. 56.1 ¶ 22.2.) Brown even asked Principal Williams, "With her attendance pattern, do you really want to do this?" (*Id.* ¶ 22.3) After appealing, Lener ultimately was authorized to work during the summer, but she only worked six of the ten days because of the delay in authorization. (*Id.* ¶ 23.) Plaintiff asserts that this denial of work was an adverse employment action.

Although plaintiff claims that she was threatened with a hearing because of her absences (Pl. 56.1 ¶ 20.1), the District never issued any charges and specifications against her pursuant to New York Education Law § 3020 (Def. 56.1 ¶ 21).

### 3. Incident with Student

On May 14, 2009, plaintiff was in her office with a sixth grade special education student when he attempted to sit on the arm of her chair. (Pl. 56.1 ¶ 55.) Plaintiff told the student that he was not supposed to be sitting on the chair. (*Id.* ¶ 56.) After the incident, plaintiff met with Assistant Principal Eldorado Burke-McNair, a Black woman, and given a letter regarding the issue even though plaintiff explained what had happened. (*Id.* ¶ 57.) In June 2009, Williams told plaintiff that the memorandum would be removed from her file because it was meritless. (*Id.* ¶¶ 60, 62.) Plaintiff contends that Brown has purposefully kept the letter in the file. (*Id.* ¶ 61.) She also claims that her performance has been affected from increased stress and anxiety stemming from her coworkers' knowledge about the alleged incident. (*Id.* ¶ 63.)

There is no evidence that, as a result of her absenteeism or any other reason,

---

[5] Plaintiff testified that coworkers made comments about her because she took off certain Jewish holidays. (Def. 56.1 ¶ 28.) She also testified that coworkers said, "You don't get your work done, you don't come to meetings so you don't know what's going on, should other people have to do you[r] work when I was doing my work." (*Id.* ¶ 29.)

[6] In preparing the evaluation, Williams did not review Dr. Reitman's notes, although he knew plaintiff was absent because of "something medical." (Pl. 56.1 ¶ 35.10; Deposition of Henry Williams ("Williams Dep."), Pl. Ex. D, at 36, 50–51.) He also did not know that plaintiff had attendance issues before that academic year. (*Id.* ¶ 37.)

[7] Brown's policy, on its face, does not distinguish between absences taken for legitimate reasons and absences taken without any reason.

4

plaintiff has been terminated from her position with the District, that plaintiff has been denied any pay raises, or that plaintiff has been denied any other work opportunities other than the alleged four days of summer 2011 work detailed *supra*.

### 4. EEOC Proceedings

The Equal Employment Opportunity Commission ("EEOC") received plaintiff's charge, which raised claims under Title VII of the Civil Rights Act of 1964 and the ADA, on April 23, 2012. (EEOC Charge, Def. Ex. N.) The EEOC issued plaintiff a right-to-sue letter on July 11, 2012. (Notice of Right-to-Sue Letter, Def. Ex. O.)

### B. Procedural Background

Plaintiff filed this action in the Supreme Court of the State of New York, County of Nassau, on May 23, 2012. The action was removed to this Court on July 5, 2012. On August 22, 2012, this Court so ordered a stipulation dismissing plaintiff's state law claim without prejudice. Defendants then answered the complaint on August 3, 2012.

On January 7, 2014, defendants moved for summary judgment. Plaintiff opposed on March 18, 2014. Defendants replied on March 28, 2014. The Court held oral argument on May 6, 2014. During oral argument, the Court requested supplemental briefing regarding the possibility of plaintiff amending the complaint to assert an ADA claim. On May 6, 2014, plaintiff informed the Court that plaintiff had filed her EEOC charge on April 18, 2012, and received a right-to-sue letter on September 26, 2012. Defendants then filed a supplemental brief opposing the amendment on May 19, 2014. Plaintiff responded on June 2, 2014, and defendants replied on June 5, 2014. The matter is fully submitted, and the Court has considered all of the parties' submissions.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must

come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. DISCUSSION

#### A. Race and Religion Discrimination

Defendants argue that summary judgment is warranted on the race and religion discrimination claim under 42 U.S.C. § 1983 because plaintiff cannot establish a prima facie case of discrimination. Defendants also argue that, even assuming plaintiff established a prima facie case, she has failed to come forward with evidence from which a reasonable jury could conclude that defendants' legitimate reason for any actions taken against plaintiff—her attendance—was a pretext for discrimination. For the reasons discussed below, the Court concludes that these claims cannot survive summary judgment.

##### 1. Legal Standard

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII") prohibits discrimination against an employee based on her gender, race, or national origin. *See* 42 U.S.C. § 2000e-2(a). Claims of discrimination brought under Section 1983 are analyzed using the same framework as claims brought under Title VII, and the

6

outcome in each instance will be the same as the outcome under Title VII. *Zagaja v. Vill. of Freeport*, No. 10-cv-3660(JFB)(WDW), 2012 WL 5989657, at *15 n.6 (E.D.N.Y. Nov. 20, 2012) (citing, *inter alia*, *Kearny v. Cnty. of Rockland ex rel. Vanderhoef*, 185 F. App'x 68, 70 (2d Cir. 2006) (holding that plaintiff's "equal protection claim pursuant to 42 U.S.C. § 1983 for age-based employment discrimination fails for the same reasons that her ADEA and NYSHRL claims fail" under *McDonnell Douglas* analysis)). As relevant here, plaintiff claims that defendants discriminated against her on the basis of her race and religion.

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment action was motivated, at least in part, by an "impermissible reason," *i.e.*, that there was discriminatory intent. *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997). In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case must satisfy the three-step *McDonnell Douglas* test.

First, the plaintiff must establish a prima facie case of unlawful discrimination by showing that (1) she is a member of a protected class (2) who performed her job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination (or retaliation). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n.13 (1973) (noting that elements of a prima facie case vary depending on factual circumstances); *Stratton v. Dep't for the Aging for N.Y.C.*, 132 F.3d 869, 879 (2d Cir. 1997). Second, if the plaintiff establishes a prima facie case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Stratton*, 132 F.3d at 879; *see also Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142–43 (2000). "The purpose of this step is to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Stratton*, 132 F.3d at 879 (citation and internal quotation marks omitted). Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *see also James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that a reasonable jury could conclude that more likely than not the employer's actions were motivated, at least in part, by a discriminatory reason. *See James*, 233 F.3d at 154; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207 (S.D.N.Y. 2000).

To meet this burden, the plaintiff may rely on evidence presented to establish her prima facie case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James*, 233 F.3d at 157. Instead, the question is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient

evidence to support an inference of discrimination. *See id.*; *Connell*, 109 F. Supp. 2d at 207–08.

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove[—] particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

2. Analysis[8]

Defendants do not dispute that plaintiff is a member of a protected class because she is Jewish. (Def. Mem., at 4.) They dispute whether she performed her duties satisfactorily, whether any of the alleged incidents are adverse employment actions, and whether any of those incidents occurred in circumstances giving rise to an inference of unlawful discrimination. Defendants also argue that, assuming plaintiff has established a prima facie case, she cannot rebut defendants' non-discriminatory, legitimate reason for their actions: plaintiff's attendance issues. *See Rosa v. Nat'l Westminster Bank*, 842 F. Supp. 679, 693 (E.D.N.Y.), *aff'd*, 41 F.3d 1501 (2d Cir. 1994) (finding that defendant articulated valid, legitimate, non-discriminatory reasons for failing to promote plaintiff, including poor punctuality and attendance—"failures in basic job requirements"). Plaintiff argues that a reasonable jury could conclude she was subjected to disparate treatment vis-à-vis other, similarly situated guidance counselors on the basis of her race and religion because (1) although plaintiff was issued letters and a negative evaluation as a result of her absences, the District treated differently Judith Bramble, a Black and non-Jewish "similarly situated fellow guidance counselor" with an allegedly similar attendance record in 2010–2011; and (2) only plaintiff—the sole Jewish guidance counselor—was denied the ability to earn extra income during the summer of 2011. (Opp'n, at 12–13.) Plaintiff also argues that an inference of discrimination can be drawn because Brown told her that she was dressed "inappropriately" one day, even though other non-Caucasian, non-Jewish coworkers wore the same attire. (*Id.* at 12–13 (citing Pl. 56.1 ¶ 53).) Third, plaintiff contends that certain "harassing comments and actions" support her claims: (1) Betty Cross, a Black member of the Board of Education, told plaintiff, "I don't understand you people" when plaintiff informed Cross that she would be unable to attend a certain event (*id.* at 14 (citing Pl. 56.1 ¶¶ 26, 26.2)); (2) the District "forced Plaintiff to bring in a note from her grandmother's rabbi to prove that she missed work to go to temple on a Jewish holiday," and coworkers mocked her absence for that reason and commented that she was not actually in temple but just took the day off (*id.*); and (3) Brown "threatened Plaintiff with termination if she requested" any 504 accommodation (*id.* at 16–17).

Even assuming *arguendo* that the 2010–2011 negative evaluation, the initial refusal to allow plaintiff to work in the summer of 2011, the reprimand regarding the alleged student incident, and the letters regarding attendance are adverse employment actions,[9]

---

[8] Although the Court focuses on whether plaintiff has articulated a prima facie case of discrimination based on race and religion, the Court also discusses pretext.

[9] A plaintiff suffers an adverse employment action when she experiences a "materially adverse change in

8

and construing the evidence most favorably to plaintiff, the Court concludes that Lener has not produced sufficient evidence to establish a prima facie case of race and religion discrimination with respect to any of these actions, much less show pretext.

First, the fact that plaintiff is a member of a protected class, while her supposedly similarly situated coworkers are members of another protected class, is not sufficient in itself to establish a reasonable inference of discrimination. A plaintiff can raise an inference of discrimination by showing disparate treatment: that a similarly situated employee outside the protected group received more favorable treatment. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). The law does not require employees to be similarly situated in all respects, but rather requires that they be similarly situated in all material respects. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an identically situated employee."); *accord Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). The Second Circuit has further defined what the term "all material respects" means in this context:

> What constitutes "all material respects" . . . varies somewhat from case to case and, as we recognized in *Norville*, must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical. . . . The determination that two acts are of comparable seriousness requires—in addition to an examination of the acts—an examination of the context and surrounding circumstances in which those acts are evaluated.

*Graham v. Long Island R.R.*, 230 F.3d 34, 40–41 (2d Cir. 2000) (citations and quotations omitted).

Here, no reasonable jury could conclude that Bramble or the other counselors were

---

the terms and conditions of employment." *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999) (*quoting Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)). Typical adverse employment actions may include termination from a job, decrease in salary, material reduction in benefits or responsibilities, or a less distinguished title. *See Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Changes in assignments or duties that do not "radical[ly] change" the nature of work are not typically adverse employment actions. *Galabya*, 202 F.3d at 640 (quoting *Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 366 (2d Cir. 1980)).

Negative evaluations without any accompanying adverse consequences are not adverse employment actions. *E.g.*, *Valenti v. Massapequa Union Free Sch. Dist.*, Nos. 03-CV-1193 (JFB)(MLO), 04-CV-5271 (JFB)(MLO), 2006 WL 2570871, at *9 (E.D.N.Y. Sept. 5, 2006); *see also Castro v. N.Y.C. Bd. of Educ.*, No. 96 Civ. 6314(MBM), 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) (holding that negative evaluations "unattended by a demotion, diminution of wages, or other tangible loss do not materially alter employment conditions"). Of course, there are times when a negative evaluation does constitute an adverse employment action, if it is accompanied by, or results in, a change in conditions of employment. At most, here, plaintiff suffered the loss of four days of summer work (which do not appear to be contractually guaranteed) as a result of the evaluation. There is no evidence of more significant negative impacts to plaintiff's employment.

similarly situated to plaintiff. According to Brown, despite being subject to the same attendance standards as other employees, Bramble was very sick in 2010–2011 and had "leave of absences" and "a 504" on file. (Brown Dep. at 61:20–64:3, Def. Ex. G.) Bramble, unlike Lener, requested an accommodation. (*Id.* at 64:3–5.) Thus, the situation with Bramble was materially different given the lack of a request for an accommodation by plaintiff. Further, although plaintiff claims that Bramble sometimes was absent because she could not get a cab to work, conducted funerals, tended to matters in her church, or went to foreign countries for missionary work (Lener Dep. at 63:4–11, Def Ex. C), and that Bramble was never counseled or negatively evaluated as a result (Lener Aff. ¶ 9, Pl. Ex. 1), there is no evidence as to the dates of those absences, or that those absences were not approved by Bramble's supervisors. There also is no evidence that these absences were as frequent as plaintiff's. Similarly, with respect to the other guidance counselors who worked the full ten days during the summer, plaintiff points to no evidence that their attendance records were similar to hers during the relevant time. Plaintiff also does not challenge the District's refusal to allow her to work during the summers of 2009 and 2010 because of her attendance issues. Therefore, because "plaintiff's misconduct is objectively more serious than that of [the] proposed comparator[s], differential treatment by the employer does not create an issue of fact that will defeat a motion for summary judgment." *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 464 (S.D.N.Y. 2006); *see also Tomasino v. Mount Sinai Med. Ctr. & Hosp.*, No. 97 Civ. 5252, 2003 WL 1193726, at *14 (S.D.N.Y. Mar. 13, 2003) (holding that the comparators were not similarly situated because they did not commit "the most serious of the infractions for which [plaintiff] was discharged").[10]

Second, even viewed in the light most favorable to plaintiff, Brown's comment about plaintiff's attire does not raise any genuine issue of material fact or give rise to an inference of discrimination. Plaintiff testified, "After one of the New York teams [the Mets] made a playoff or a pennant or something, I wore the T-shirt, the jersey for the team, and I was told [by Brown] in the middle of the hallway that I was inappropriately dressed when there were other people walking through the hallways that had team jerseys on as well."[11] (Lener Dep. at 60:22–61:12.) There is no evidence that Brown punished Lener for this attire. In addition, no reasonable jury could conclude that the "other people" were plaintiff's co-workers and/or that Brown allowed them to wear the attire because of their membership in a particular class. Nor could a reasonable jury objectively conclude that race or religious discrimination motivated the comment. Moreover, this incident occurred in 2006, six years before the commencement of this action. Thus, there is no basis to use this alleged incident to show that defendants' proffered, legitimate non-discriminatory reasons for any actions taken against plaintiff were pretextual. *See, e.g.*, *Lee v. N.Y. State Dep't of Health*, No. 99 Civ. 4859, 2001 WL 34031217, at *19 (S.D.N.Y. Apr. 23, 2001) (finding that remarks by an employer cannot establish pretext when they are remote in time and are

---

[10] To the extent plaintiff's evidence could establish a prima facie case, the Court concludes, for reasons stated more fully *infra*, that plaintiff does not show that defendants' proffered reason for any adverse action—excessive absenteeism—is a pretext for discrimination based upon race or religion.

[11] The Mets last won a pennant in 2006. Mets Timeline, The Official Site of the New York Mets, http://newyork.mets.mlb.com/nym/history/timeline5.jsp (last visited September 12, 2014).

unrelated to the challenged adverse employment decision).

Third, plaintiff testified that, fourteen years before plaintiff commenced this action, Cross "had seen me in the hall. I was walking . . . to get a student and she stopped me and she asked me if I was going to this function for the then principal. I said I wouldn't be able to. She said to me I don't understand you people. We hire you to work here and you don't do anything." (Lener Dep. at 55:1–18, 57:24–58:5.) Plaintiff contends that "you people" meant White and Jewish people, because in Hempstead, "[y]ou know when someone is referring to you differently because of your race or religion or because you are different than other people there." (*Id.* at 55:22–56:3.) The alleged remark was made sixteen years ago by someone who had no involvement in any of the allegedly adverse employment actions at issue. Thus, plaintiff's subjective understanding of Cross's statement cannot give rise to a genuine issue of material fact as to an inference of discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (statements by nondecisionmakers, or statements unrelated to the decisionmaking process, are insufficient from which to infer discriminatory intent), *superseded by statute on other grounds as recognized in Burrage v. United States*, 134 S. Ct. 881, 889 n.4 (2014); *Venti v. EDS*, 236 F. Supp. 2d 264, 277 (W.D.N.Y. 2002) (statement by coworker that plaintiff was "too old" to be pregnant did not support inference of discrimination, since it was not connected to employer's decision to terminate plaintiff, and speaker had no responsibility for or input into the decision to terminate plaintiff); *Georgy v. O'Neill*, No. 00 Civ. 0660, 2002 WL 449723, at *6 (E.D.N.Y. Mar. 25, 2002) (alleged reference to national origin by nondecisionmaker, six months prior to plaintiff's termination, is "the kind of isolated and stray remark insufficient, without more, to raise an inference of discrimination and defeat summary judgment"). In short, plaintiff cannot rationally rely on Cross's statement to establish a prima facie case of discrimination or show that defendants' non-discriminatory justification is pretextual.

The same is true with respect to the comments by plaintiff's coworkers, the District's request that plaintiff bring a note from her rabbi when she missed work for a Jewish holiday, and Browns' alleged statement regarding a 504 accommodation. There is no evidence that the coworkers could affect the conditions of plaintiffs' employment, and their comments were made between 2004 and 2008. (*See* Lener Dep. at 57:17–18.) The request for the note also came "earlier in [her] tenure at the middle school." (*Id.* at 57:19–23.) Nothing indicates that the comments had anything to do with race or religion, that the request for a note was not legitimate, or that Brown ever made any statement regarding plaintiff's race or religion. To the extent plaintiff compares herself with Bramble to show Brown's discriminatory animus, such comparison is not probative for the reasons stated *supra*. Thus, these facts are not probative of pretext or the existence of any discrimination based on race or religion.

Accordingly, because plaintiff has failed to establish a prima facie case of discrimination based on race or religion, and also has failed to rebut defendants' proffered legitimate reason for any adverse employment actions, the Court grants summary judgment to defendants on the race and religion discrimination claim under 42 U.S.C. § 1983.

11

B. Disability Discrimination and the Equal Protection Clause

Defendants argue that the disability discrimination claim under Section 1983 must be dismissed as a matter of law because the Equal Protection Clause does not apply to claims brought by public employees under a class of one theory. Plaintiff, citing to cases dated 2002 and earlier, argues that her disability discrimination claim is cognizable and survives summary judgment. As set forth below, the Court concludes that defendants are entitled to summary judgment on the disability discrimination-based § 1983 claim as a matter of law.

As a threshold matter, it is well settled that a plaintiff asserting discrimination claims under a federal statute, such as Title VII, may bring a concurrent Section 1983 action, such as an alleged denial of equal protection, "so long as the § 1983 claim is based on a distinct violation of a constitutional right." *Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir. 1994). Thus, for example, even though a race discrimination claim (such as is brought here) could be brought under Title VII, it also can be asserted under § 1983. However, as the Second Circuit has made clear, "[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Freedom from discrimination on the basis of disability is a right secured by statute, *see* ADA, 42 U.S.C. §§ 12031 *et seq.*, not by the Constitution. *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014); *see Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."); *accord O'Leary v. Town of Huntington*, No. 11 Civ. 3754(JFB), 2012 WL 3842567, at *14 (E.D.N.Y. Sept. 5, 2012). Therefore, to the extent Lener's claim of disability discrimination is premised upon the substantive rights provided by the ADA, the claim is not actionable under § 1983. *See, e.g.*, *Fierro*, 994 F. Supp. 2d at 590; *EC ex rel. RC v. Cnty. of Suffolk*, 882 F. Supp. 2d 323, 355 (E.D.N.Y. 2012) ("ADA has its own right of enforcement and, consequently, an ADA action may not be brought pursuant to 42 U.S.C. § 1983."); *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07 Civ. 8828(KMK), 2009 WL 3151200, at *6 (S.D.N.Y. Sept. 29, 2009) (granting motion to dismiss § 1983 claim on ground that "[t]he broad discriminatory claims alleged by Plaintiffs are, at best, the type of alleged discrimination that . . . the ADA [is] designed to protect against, not the Equal Protection Clause" (internal quotation marks omitted)). This provides an independent basis for dismissing the Section 1983 claims to the extent that they are based purely on rights secured by the ADA.

Nevertheless, a plaintiff may bring a § 1983 claim premised upon substantive rights distinct from the employment discrimination statutes, such as the ADA. *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993); *see also Patterson*, 375 F.3d at 225. Here, plaintiff also claims defendants treated her differently from other similarly situated individuals, and thus violated her equal protection rights. Disability and/or perceived disability are not suspect or quasi-suspect classifications. *O'Leary*, 2012 WL 3842567, at *13 n.10 (collecting cases). Nevertheless, "[a]lthough the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, courts have long recognized that the equal protection guarantee also extends to

individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Sharpe v. City of New York*, No. 11 Civ. 5495(BMC), 2013 WL 2356063, at *3 n.5 (E.D.N.Y. May 29, 2013) (internal quotation marks and citations omitted). In her opposition, plaintiff apparently styles her § 1983 claim as a "selective enforcement" equal protection claim, not a "class of one" claim (*see* Opp'n, at 18), but she does not affirmatively disclaim the "class of one" theory. In any event, under either theory, plaintiff's disability-based equal protection claim must fail for the reasons discussed below.

1. Class of One Theory

In a "class of one" case, the plaintiff uses "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Prestopnik v. Whelan*, 249 F. App'x 210, 212–13 (2d Cir. 2007). There must be "an extremely high degree of similarity" between the class of one plaintiff and "alleged comparators in order to succeed on an equal protection claim." *Sloup v. Loeffler*, 745 F. Supp. 2d 115, 128 (E.D.N.Y. 2010) [hereinafter *Sloup II*] (citations and internal quotation marks omitted).[12] Here, as detailed *supra*, plaintiff has not demonstrated she was similarly situated to any of her colleagues.

In any event, the Equal Protection Clause does not apply to public employees, like plaintiff, asserting a "class of one theory." *Enquist v. Or. Dep't. of Agric.*, 553 U.S. 591, 603 (2008) (deciding that "the class-of-one theory of equal protection has no application in the public employment context"); *Appel v. Spiridon*, 531 F.3d 138, 139–40 (2d Cir. 2008) (following *Engquist*, "the Equal Protection Clause does not apply to a public employee asserting a violation of the [Equal Protection] Clause based on a 'class of one' theory of liability"); *see also Ponterio v. Kaye*, 328 F. App'x 671, 672–73 (2d Cir. 2009); *Conyers v. Rossides*, 558 F.3d 137, 152 (2d Cir. 2009); *Fierro*, 994 F. Supp. 2d at 591–92. Accordingly, defendants are entitled to summary judgment on this claim to the extent it is brought under a "class of one" theory.[13]

---

[12] The standard for "similarly situated" for a class of one claim is more stringent than for a selective enforcement claim. *Sloup II*, 745 F. Supp. 2d at 130. As one court has explained, "the Second Circuit has left no doubt that [a class of one] plaintiff must meet a high threshold to move beyond summary judgment. Specifically, for a plaintiff to demonstrate that he or she was treated differently from similarly situated individuals in an irrational manner, in violation of the Fourteenth Amendment, the plaintiff must demonstrate that he or she is prima facie identical to the comparators." *Pina v. Lantz*, 495 F. Supp. 2d 290, 304 (D. Conn. 2007).

[13] Even if plaintiff could bring a "class of one" claim, the claim would fail because, as detailed *supra*, there is no evidence that plaintiff was treated differently from any similarly situated individual because of her disability. "[T]o succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010) (internal quotation marks omitted). The uncontroverted evidence regarding Bramble's differing circumstances, and the other guidance counselors' lack of attendance issues, preclude any inference that these individuals were sufficiently similar to plaintiff. This particularly is true given plaintiff's history of attendance issues preceding the 2010–2011 year, and the fact that thirteen out of the

## 2. Selective Enforcement Theory

To prevail on a selective enforcement claim, a plaintiff must show "(1) that she was treated differently from others similarly situated, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Fierro*, 994 F. Supp. 2d at 592 (citation and internal quotation marks omitted); *accord Sloup II*, 745 F. Supp. 2d at 130–31. At the summary judgment stage, the plaintiff must present evidence comparing herself to individuals that are "similarly situated in all material respects." *Sloup v. Loeffler*, No. 05-CV-1766 (JFB)(AKT), 2008 WL 3978208, at *18 (E.D.N.Y. Aug. 21, 2008) (internal quotation marks and citation omitted) [hereinafter *Sloup I*]. In analyzing the second prong, courts must distinguish between a "motivation to punish [in order] to secure compliance with agency objectives," and "spite, or malice, or a desire to 'get' [someone] for reasons wholly unrelated to any legitimate state objective." *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)).

Courts are divided on whether selective enforcement claims remain available in the public employment context post-*Enquist*. *See Fierro*, 994 F. Supp. 2d at 592 (collecting cases). In any event, for the reasons detailed *supra*, plaintiff has failed to raise a genuine dispute of material fact as to whether any other guidance counselor, disabled or otherwise, was treated more favorably than plaintiff despite having the same attendance issues and performance evaluations. Moreover, there is no evidence

---

fifteen letters addressing plaintiff's attendance were written before Dr. Reitman's 2009 letter.

from which a reasonable jury could find that any decisionmaker acted with spite or malice towards plaintiff.

Accordingly, defendants are entitled to summary judgment on the § 1983 disability discrimination claim as a matter of law.[14]

### C. ADA Amendment

In her original complaint, plaintiff did not assert any claims for failure to accommodate or disability discrimination under the ADA. However, during oral argument, the Court stated that it would consider allowing plaintiff to amend her complaint to assert a cause of action under the ADA (although the deadline for amendments to the pleadings has expired) and requested supplemental briefing on the issue. For the following reasons, the Court shall allow plaintiff to amend her complaint.

Generally, Federal Rule of Civil Procedure 15(a) ("Rule 15") applies to motions to amend the pleadings. Under Rule 15(a), leave to amend "shall be freely granted when justice so requires." Motions for leave to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party.[15] *See Foman v. Davis*, 371 U.S.

---

[14] Because summary judgment is warranted on the above grounds, the Court need not address whether plaintiff can show the existence of a municipal policy or custom underlying any constitutional violation, or Brown's lack of involvement. In other words, when a plaintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

[15] Federal Rule of Civil Procedure (16)(b) applies to motions to amend the pleadings for cases that have progressed beyond the deadline set for amendments

178, 182 (1962); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603–04 (2d Cir. 2005); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("One appropriate basis for denying leave to amend is that the proposed amendment is futile."). Generally, a proposed amendment interposed in response to a motion to dismiss will be deemed futile if it would be subject to dismissal for failure to state a claim. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Riccuiti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). The standard governing the propriety of an amendment

> is different where . . . the cross-motion [to amend] is made in response to a [Rule] 56 motion for summary judgment, and the parties have fully briefed the issue [of] whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions. In the latter situation, even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under [Rule] 56(c).

*Id.*

1. Prejudice

The Court finds that the proposed amendment will not prejudice defendants. As indicated by plaintiff's written submission, she would bring claims for failure to accommodate and for the denied work days during the summer of 2011, not for other alleged misconduct. (*See* Pl. Supp., at 12.) These allegations are the subject of the § 1983 claims and have been thoroughly explored during discovery. Thus, allowing the proposed amendment would result in minimal (if any) further discovery. In addition, Brown cannot be prejudiced at all by the proposed amendment. Regardless of the sufficiency of the amendment, Brown cannot be held personally liable, because the ADA "does not permit the imposition of liability on individuals in their individual or representative capacities." *Turowski v. Triarc Cos., Inc.*, 761 F. Supp. 2d 107, 111 (S.D.N.Y. 2011).

2. Futility

Although defendants argue that plaintiff cannot set forth a prima face case of ADA discrimination or establish that defendants failed to grant her reasonable accommodations, the Court concludes that the claims under the ADA would not be futile, because plaintiff has submitted evidence which, when construed most favorably to plaintiff, is sufficient to raise

---

to the pleadings. By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed. *U.S. Underwriters Ins. Co. v. Ziering*, No. 06-CV-1130 (JFB)(WDW), 2010 WL 3419666, at *3 (E.D.N.Y. Aug. 27, 2010) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000)). Under Rule 16(b), a party may obtain a modification of the scheduling order only "upon a showing of good cause." According to the Second Circuit, "the primary consideration" in determining whether good cause has been shown "is whether the moving party can demonstrate diligence." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Although Rule 16(b) technically applies in this instance, the Court only considers whether plaintiff satisfies Rule 15(a), because the Court raised the possibility of the amendment itself, and defendants have not asserted that the amendment should be denied for failure to comply with Rule 16(b). Moreover, as discussed *infra*, adding ADA claims would not be so prejudicial to defendants to warrant denial of the proposed amendment.

genuine issues of fact as to whether, *inter alia*, (1) plaintiff suffered from a mental impairment that substantially limits a major life activity; (2) plaintiff was qualified to perform the essential functions of her job in the summer of 2011; (3) plaintiff was subjected to an adverse employment action because of her disability; (4) the proffered legitimate business reason was pretext for disability discrimination; and (5) plaintiff was denied a reasonable accommodation for her disability.[16]

This Court set forth the standard for disability discrimination claims in *O'Connor v. Huntington Union Free School District*, No. 11-CV-1275 (JFB)(ARL), 2014 WL 1233038 (E.D.N.Y. Mar. 25, 2014). Defendants argue that plaintiff cannot establish that she has a disability as defined by the ADA, that she is qualified to perform the essential functions of her job when she is absent, or that she suffered an adverse employment action because of the disability. The Court finds that there are genuine disputes of material fact on these issues. For instance, although "the suffering of occasional episodes of a long term or lifetime impairment will not render the individual disabled because the physical manifestation of the impairment is of insufficient duration," *Chen v. Citigroup Inv., Inc.*, No. 03 CV 6612(GBD), 2004 WL 2848539, at *3 (S.D.N.Y. Dec. 9, 2004), a reasonable jury could find that plaintiff's condition is of sufficient duration because (1) plaintiff testified that sometimes she cannot sleep through the night and her body is completely debilitated; (2) Dr. Reitman stated that plaintiff has been under his care for eight years, her symptoms have worsened, and she needs accommodations; and (3) plaintiff's attendance issues themselves support an inference that her symptoms frequently manifested and prevented her from going to work. Further, although defendants point to plaintiff's numerous absences during the 2010–2011 academic year to justify denying her work during the summer, *see Ramirez v. N.Y.C. Bd. of Educ.*, 481 F. Supp. 2d 209, 221–22 (E.D.N.Y. 2007) (addressing excessive absenteeism in context of ADA claim), there are genuine issues of fact that preclude summary judgment on the issue of whether this proffered non-discriminatory reason is pretextual in light of, *inter alia*, the following: (1) Brown's testimony that even persons absent ten days or more with documentation would be given unsatisfactory evaluations in the area of attendance; (2) the dispute over whether Brown told plaintiff she should not be working in the District if she needed a 504 accommodation; (3) the Principal's testimony that he did not remember attendance issues before 2011; and (4) the June 10, 2011 negative evaluation, which plaintiff asserts was based solely on her absences while she was on sick leave. Therefore, given such disputed issues of fact, the Court concludes that the disability discrimination claim based on the denial of work in the summer of 2011 would not be futile.

This Court set forth the standard for failure to accommodate claims in *Graham v. Three Village Central School District*, No. 11-CV-5182, 2013 WL 5445736 (E.D.N.Y. Sept. 30, 2013). Defendants argue that the claim is futile because plaintiff never sought a reasonable accommodation, no evidence corroborates plaintiff's claim about Brown's

---

[16] Defendants argue, as a threshold matter, that plaintiff's ADA claim was filed prematurely—that is, less than 180 days after filing the EEOC charge. However, although plaintiff filed the lawsuit within that period, she did not specifically assert the ADA claim in the initial complaint, which is the basis for the Court's current consideration as to whether the amendment should be allowed at this juncture. Thus, the argument regarding the 180-day waiting period is without merit.

statement to her, and plaintiff's requested accommodation of arriving later and leaving later was unreasonable. The Court again finds that there are genuine disputes of material fact on these issues. "[T]he ADA imposes liability for, *inter alia*, discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible." *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 100 (2d Cir. 2009). Accordingly, "an employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA and evidence thereof does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue." In this case, if all plaintiff's evidence is credited and construed most favorably to her, a reasonable jury could conclude that (1) Brown made the statement regarding an accommodation, and plaintiff reasonably avoided asking for one thereafter because she feared for her position; and (2) the District could reasonably accommodate plaintiff's request, depending on the time of day that she would arrive, the impact on other guidance counselors' case load, students' schedules, and other responsibilities. In that regard, there also is a material dispute about whether any such accommodation would preclude plaintiff from performing the essential duties of her job. Therefore, given these disputed issues of material fact, the Court concludes that the failure to accommodate claim also would not be futile.

Accordingly, because the proposed amendment would not be futile or prejudicial, the Court shall allow plaintiff to assert claims under the ADA.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment on the 42 U.S.C. § 1983 claims in its entirety, but the Court will allow plaintiff to file an amended complaint asserting claims under the ADA. Therefore, defendant Brown is dismissed from this action. The amended complaint shall be due within fourteen (14) days.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: September 23, 2014
         Central Islip, NY

\* \* \*

Plaintiff is represented by Steven Morelli and Paul Bartels, The Law Offices of Steven A. Morelli, P.C., 1461 Franklin Ave., Garden City, NY 11530. Defendants are represented by Austin Graff, The Scher Law Firm, LLP, One Old Country Road, Suite 385, Carle Place, NY 11514.